# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00229-CR
## NO. 03-11-00230-CR

**Rhonnie Odell Simmons, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NOS. D-1-DC-10-206239 & D-1-DC-10-206238
### HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Rhonnie Odell Simmons of the aggravated robbery of two men in one incident, and the trial court assessed sentence of two concurrent 15-year terms in prison. On appeal, Simmons raises three points of error: (1) the evidence was insufficient to prove that he used the knife as a deadly weapon, (2) the evidence was insufficient to prove that he was trying to appropriate property without the owner's consent, and (3) his trial attorney rendered ineffective assistance of counsel by successfully objecting to a limiting instruction regarding the effect of his prior convictions. We will affirm the judgments of conviction.

## BACKGROUND

This case arises from an encounter between Simmons and two men on a sidewalk in Austin on a Sunday afternoon. The two men were housemates who walked to a convenience

store, made purchases, and were returning home when Simmons approached them and asked for money. One of the victims described Simmons as woozy and jumpy. Simmons asked for money to buy pizza and "weed" for him and his girlfriend. They offered to give him a dollar, but Simmons said that was not enough. He offered the men his girlfriend for seven dollars, but they declined. When they tried to move on, Simmons stepped in their way. Eventually, Simmons pulled out a knife with a blade at least three inches long. According to the victims, Simmons told an incoherent story, swung the knife toward one of the men's throat, said "I could cut you here, I could cut you," and then swung the knife about an inch from the man's torso and said "I could cut you here." The victim testified that Simmons turned the knife toward the other man and said, "I could fucking kill you" to both of them three or four times. The men testified that they were afraid Simmons was going to stab them. The men told him they didn't have money with them and would have to go to an automated teller machine. Simmons agreed that would be a good idea, so all three men went to the nearby convenience store. Simmons put the knife away when entering.

At the store, however, the men declined to give Simmons any money and tried to alert the clerk to the danger. They again offered Simmons a dollar, which he again rejected. Simmons began talking to other people in the store. He then told the men they were nice guys and that he would let them go. Still fearing being stabbed the men stayed in the store. Another customer noticed that Simmons stayed close to the men even when they tried to move away from him. The clerk told Simmons to leave, which he did. After hearing the men's story, the customer called the police.

When police arrested Simmons, they found a knife. Simmons also told the officers a rambling story involving his girlfriend. He would interject that he told the robbery victims that

2

"if I wanted to rob you, I could." A police officer testified that Simmons's knife could be a deadly weapon when used to make slashing motions toward someone.

Simmons testified that he was high when he sought money. He testified that his rambling story explained why he needed money. It involved a woman who was waiting for him at a motel who had become angry with him and threatened him with a knife. Simmons testified that, when he swung the knife at the men, he was merely re-enacting what the woman had said and done to him, not threatening the men. They simply misunderstood him.

The jury, however, convicted Simmons of aggravated robbery.

## DISCUSSION

Simmons raises three points of error: (1) the evidence was insufficient to prove that the knife was a deadly weapon, (2) the evidence was insufficient to prove that he was trying to appropriate property without the owner's consent, and (3) his trial attorney rendered ineffective assistance by objecting to an instruction regarding the effect of prior convictions, which prevented the jury from hearing a limiting instruction on the proper use of the convictions.

### Deadly Weapon

The jury found that Simmons committed the robbery using a deadly weapon. To make a deadly weapon finding, the jury must find that the knife was a weapon that "in the manner of its use or intended use was capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2012). When an appellant challenges the sufficiency of the evidence to sustain a criminal conviction, we must decide whether a rational trier of fact could have found the

3

essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all the evidence is in the light most favorable to the verdict and must assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 235 S.W.3d at 778.

We conclude that, although Simmons did not stab the victims, there was sufficient evidence to support the jury's finding that the knife was a deadly weapon. The victims' agreement that Simmons was telling a rambling story about his girlfriend when he made the slashing motions with the knife did not foreclose the jury from finding that the knife was a deadly weapon. The jury saw the knife and heard testimony that its blade was at least three inches long. The jury heard testimony about Simmons's verbal threats and slashing motions with the knife at both victims, at least once coming within an inch of one of the victims. One of the victims described these action as "fake slashing," but said he called it "fake" because he was never actually cut. The other victim explained as follows:

> I mean I felt like he was using the knife to demonstrate what he could do to my friend by when he says I can cut you here, I could cut you here, and then turning to me and saying with the knife to my chest I could fucking kill you. That doesn't seem like a story you are telling when I am rejecting giving money.

A police officer testified that the knife, so used, could be a deadly weapon. The statute allows a deadly-weapon finding to be based on the weapon's intended use. Although Simmons denied intending the men harm and never directly said "Give me money or I will stab you with this knife," the jury could reasonably have found that Simmons was illustrating how he intended to slash the men

4

if they did not give him the money he desired. Simmons was also described as woozy and jumpy. The jury could have concluded that the knife was capable of causing death or serious bodily injury in the manner in which it was used or was intended to be used. Sufficient evidence supports the deadly-weapon finding.

**Effective consent**

Simmons argues that the evidence is insufficient to support the finding of the element of robbery that he was trying to appropriate money without the owners' effective consent. *See* Tex. Penal Code Ann. §§ 29.02 (West 2011) & 31.03(b)(1) (West Supp. 2012). Simmons contends that he was a panhandler who sought only to get money through consent. However, even if he did not demand money while gesturing with the knife, the sequence of events could imply a connection between the request for money, the threats, and the slashing motions. The jury could infer the necessary intent from his actions and the witnesses' perception of them. Viewed in the light most favorable to the verdict, the evidence of the threats to cut and kill indicate an intent to override the victims' lack of consent to give him money.[1]

**Ineffective assistance of counsel**

Simmons contends that his counsel was ineffective for objecting to the trial court's attempt to instruct the jury to consider Simmons's criminal history for purposes of impeachment only. The appellant must show that: (1) counsel's performance was deficient in that it fell below

---

[1] Robbery can occur even if no money changes hands because the statute includes threats made in the course of an attempt to commit theft. Tex. Penal Code Ann. § 29.01(1) (West 2011); *see also id.* §§ 29.02-.03.

an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). To establish deficient performance under the first prong, a defendant must show that no reasonable trial strategy could justify counsel's conduct. *See Strickland*, 466 U.S. at 689; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 694-95. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A defendant establishes prejudice under the second prong of *Strickland* if he shows a reasonable probability—a probability sufficient to undermine confidence in the trial's outcome—that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 812. The appellant must prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* at 813.

Simmons contends on appeal that his trial counsel was ineffective because he refused to allow the trial court to instruct the jury to consider his criminal record only as it affected his credibility. He admitted on cross examination to eight prior felonies for delivery of a controlled substance, credit card abuse, possession of a controlled substance (four counts), and unauthorized use of a motor vehicle (four counts). Trial counsel did not request a limiting instruction at the time or when the jury charge was being prepared. *See* Tex. R. Evid. 105(a), 609. After closing

6

arguments, the trial court announced its intention to give a limiting instruction, but acceded to Simmons's counsel's objection to the proposed additional instruction. On appeal, Simmons contends that his trial counsel's actions were not part of a reasonable trial strategy, did not protect his client's rights, and constituted deficient performance. Simmons contends that counsel's deficient performance tilted the jury toward conviction in this case in which his intent was hotly contested and credibility was key. He contends that, had the jury been limited to considering his criminal record for purposes of impeachment, it probably would not have convicted him. Instead, he argues, that the jury was free to convict him as a bad guy and did so.

We conclude that Simmons has not carried his burden to show that trial counsel provided ineffective assistance. There is no statement or testimony from trial counsel regarding what strategy he intended to further by his objection.[2] The State posits that trial counsel might have

---

[2] We do not agree with Simmons's assertion that trial counsel admitted he was acting deficiently in objecting to the limiting instruction. When the trial court asked if either side objected to the proposed instruction, the following exchange occurred:

[DEF. COUNSEL:]    I guess I will agree to it.

THE COURT:    Yes or no?

[DEF. COUNSEL:]    I mean I can be obstructionist and try to build in error. I guess I object to it. I mean, you know, it is not doing my job.

THE COURT:    Not doing your job to protect the rights? You don't want a request specifically is your—

[DEF. COUNSEL:]    Yes.

THE COURT:    I want on the record that the defendant is objecting, consider this defendant's record to be part of the strategy coming in and therefore I will honor the defendant's request and not include the charge.

7

intended to allow the jury to consider that Simmons's felonious past was non-violent, and that the armed robbery alleged was inconsistent with his character. That would be consistent with the defense's attempt to show that Simmons did not intend to threaten the victims but was instead telling a story incoherently because of intoxicants and—unfortunately for all concerned—using a real knife as a prop. Had the trial court given the limiting instruction, it would have forbidden the jury from considering the previous offenses for non-credibility issues. However, the lack of a statement from trial counsel regarding trial strategy also dampens the effectiveness of the State's theory somewhat.

The critical weakness in Simmons's argument on appeal is its failure to consider the totality of trial counsel's representation. While an error affecting a single aspect of a trial might undermine the entire result, it is not clear that occurred here. The record shows that trial counsel filed relevant motions—including one regarding the State's intention to introduce Simmons's criminal history—and examined witnesses at trial, creating with the victims' testimony a framework on which he could hang Simmons's explanation that the whole event was a misunderstanding. Trial counsel gained a concession from one of the victims that it was "fair to say" that Simmons was using the knife to illustrate his rambling story, which could support the misunderstanding theory. Simmons has not demonstrated that his trial counsel's failure to obtain or permit a limiting instruction rendered his entire representation ineffective.

Even if he established the first prong of *Strickland*, Simmons has not shown that the absence of a limiting instruction affected the outcome. Because Simmons and the victims told

---

We read trial counsel's statement to be that he would not be doing his job if he allowed the instruction to be read. His objection was an affirmative choice made in representing his client, not an overt and admitted ploy to undermine his client.

versions of events that differed critically on whether Simmons threatened the men in order to obtain money, the key to the trial was the credibility of the witnesses. Had the limiting instruction been given, the jury still could have considered his eight prior offenses to impeach his credibility. The absence of the limiting instruction allowed the jury to consider those offenses for any purpose, but we do not see how that altered the outcome in a way harmful to Simmons. The prior offenses do not show character conformity in this case because none of them involved Simmons pulling a knife on victims. If anything, that contrast might tend to favor acquittal. Because the limiting instruction would have permitted the jury to consider the offenses for the key issue of credibility—and no additional factor the jury was allowed to consider is shown to have affected the outcome—we conclude that the absence of the limiting instruction had no discernible effect on the outcome of the trial. Simmons has not shown himself entitled to reversal of his convictions based on his counsel's successful objection to the limiting instruction.

The judgments of conviction are affirmed.

---

Jeff Rose, Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed: August 22, 2012

Do Not Publish

9